*IN THE UNITED STATES DISTRICT COURT*
*FOR THE WESTERN DISTRICT OF MICHIGAN*
*NORTHERN DIVISION*

UNITED STATES OF AMERICA,

                Plaintiff,

vs.                          Case No: 2:22-cr-25

SAMUEL OGOSHI, SAMSON OGOSHI,

                Defendants.
_____/

*FIRST APPEARANCE*

*BEFORE THE HONORABLE RAY KENT*
*U.S. MAGISTRATE JUDGE*

*Grand Rapids, Michigan*
*August 14, 2023*

APPEARANCES:

For the Plaintiff:   MR. DANIEL Y. MEKARU
                      MR. DAVIN REUST
                      330 Ionia Avenue, NW
                      P.O. Box 208
                      Grand Rapids, MI 49501-0208
                      (616) 456-2404

For Defendant Samuel Ogoshi:

                      MR. SEAN TILTON
                      Assistant Public Defender
                      Federal Public Defender (Grand Rapids)
                      50 Louis St. NW, Ste. 300
                      Grand Rapids, MI 49503-2633
                      (616) 742-7420

APPEARANCES (Continued)

For Defendant Samson Ogoshi:

                          MS. JULIA ANNE KELLY
                          Wiley & Chamberlain LLP
                          300 Ottawa Avenue, NW, Suite 810
                          Grand Rapids, MI 49503
                          (616) 458-2212

        TRANSCRIBED BY:    Genevieve A. Hamlin, CSR-3218 RMR, CRR
                          Federal Official Court Reporter
                          110 Michigan Avenue NW
                          Suite 601
                          Grand Rapids, MI 49503
                          (517) 881-9582

1   Grand Rapids, MI

2   August 14, 2023

3   3:59 p.m.

4                           *PROCEEDINGS*

5           THE CLERK:  The United States District Court for the

6   Western District of Michigan is now in session.  The Honorable

7   Ray Kent, United States Magistrate Judge presiding.

8           Please be seated.

9           THE COURT:  This is 22-cr-25, the United States

10  versus Samuel -- is it Ogoshi, Mr. Tilton?

11          MR. TILTON:  Yes, sir.

12          THE COURT:  Okay.  And Samson Ogoshi.

13          Mr. Mekaru, Mr. Reust appear on behalf of the United

14  States.  Mr. Tilton on behalf of Samuel Ogoshi and Ms. Kelly

15  on behalf of Samson Ogoshi.

16          Gentlemen, we're here today because the government is

17  bringing criminal charges against you.  I'm going to talk to

18  you about the charges, the penalties, and some of your rights.

19          My first question for each of you is how far you got

20  in school.  Samuel Ogoshi?

21          DEFENDANT SAMUEL OGOSHI:  Yes, sir.

22          THE COURT:  How far did you get in school?

23          DEFENDANT SAMUEL OGOSHI:  I'm in college right now.

24          THE COURT:  Okay.

25          DEFENDANT SAMUEL OGOSHI:  Yes, sir.

THE COURT: And I understand -- I didn't know this -- but that English is the national language of Nigeria?

DEFENDANT SAMUEL OGOSHI: Yes, sir.

THE COURT: Okay. Samuel (sic) Ogoshi, how about you, sir, how far did you get in school, sir?

DEFENDANT SAMSON OGOSHI: Secondary school.

THE COURT: Secondary school?

DEFENDANT SAMSON OGOSHI: Yeah, yeah.

THE COURT: Okay. So you can both read and write English? Samson?

DEFENDANT SAMSON OGOSHI: Yes, sir.

THE COURT: Samuel?

DEFENDANT SAMUEL OGOSHI: Yes, sir.

THE COURT: Okay. How old are you, Samuel?

DEFENDANT SAMUEL OGOSHI: I'm 23.

THE COURT: Samson?

DEFENDANT SAMSON OGOSHI: I'll be 21 this year.

THE COURT: Do you have any physical or mental disability that would make it difficult for you to understand the charges against you or what's happening here in the courtroom? Samuel Ogoshi?

DEFENDANT SAMUEL OGOSHI: No, sir.

THE COURT: Samson Ogoshi?

DEFENDANT SAMSON OGOSHI: No, sir.

THE COURT: In the last 24 hours have you had any

drugs, alcohol, or medicine that might impair your ability to understand those things?  Samuel Ogoshi?

DEFENDANT SAMUEL OGOSHI:  No, sir.

THE COURT:  Samson Ogoshi?

DEFENDANT SAMSON OGOSHI:  No, sir.

THE COURT:  Gentlemen, you have the right to remain silent.  You don't have to say anything to me about the charges against you.  You don't have to say anything to Mr. Mekaru or Mr. Reust, the attorneys for the government.  You don't have to say anything to any member of law enforcement, but if you talk to anybody other than your own lawyer your statements can and will be used against you in court later. Do you understand that, Samuel Ogoshi?

DEFENDANT SAMUEL OGOSHI:  Yes, sir.

THE COURT:  Samson Ogoshi?

DEFENDANT SAMSON OGOSHI:  Yes, sir.

THE COURT:  Gentlemen, you're entitled to a lawyer. You're always free to hire your own.  If you can't afford a lawyer, the Court will appoint one for you.

I have a financial affidavit, one with each of your names on it.  I have reviewed those affidavits and find that you both qualify for a court-appointed lawyer.  Samuel Ogoshi, are you asking for a lawyer?

DEFENDANT SAMUEL OGOSHI:  Yes, sir.

THE COURT:  All right.  Mr. Tilton, you're appointed.

1  MR. TILTON:  Thank you, Your Honor.

2  THE COURT:  You're welcome.  Samson Ogoshi, are you

3  asking for a lawyer?

4  DEFENDANT SAMSON OGOSHI:  Yes.

5  THE COURT:  Ms. Kelly, you are appointed.

6  MS. KELLY:  Thank you, Your Honor.

7  THE COURT:  You're welcome.  All right.  Gentlemen,

8  have you each seen a copy of the document called the

9  indictment?  Samuel Ogoshi?

10  DEFENDANT SAMUEL OGOSHI:  Yes, sir.

11  THE COURT:  Samson Ogoshi?

12  DEFENDANT SAMSON OGOSHI:  Yes.

13  THE COURT:  All right.  Are you indeed and in fact

14  the Samuel Ogoshi named in that indictment?

15  DEFENDANT SAMUEL OGOSHI:  Yes, sir.

16  THE COURT:  And are you the Samson Ogoshi named in

17  that indictment?

18  DEFENDANT SAMSON OGOSHI:  Yes.

19  THE COURT:  Are each of your names spelled correctly?

20  Samuel Ogoshi?

21  DEFENDANT SAMUEL OGOSHI:  Yes, sir.

22  THE COURT:  Samson Ogoshi?

23  DEFENDANT SAMSON OGOSHI:  Yes, sir.

24  THE COURT:  Have you each had a chance, at least

25  briefly, to discuss the indictment and the case with your

lawyers?  Samuel Ogoshi?

DEFENDANT SAMUEL OGOSHI:  Yes, sir.

THE COURT:  Samson Ogoshi?

DEFENDANT SAMSON OGOSHI:  Yes, sir.

THE COURT:  All right.  Gentlemen, I'm going to go through the charges against you now.  Each charge is contained in a separate numbered count in the indictment.  Both of you are charged in Counts 2, 3, and 4, so we're going to go through those first and then I'll circle back to Count 1.

Count 2 charges you with being part of a conspiracy to sexually exploit minors.  In federal criminal law a conspiracy is simply an agreement between two or more people to commit a crime.  In this case the government alleges that you entered into such an agreement with each other and also with Ezekiel Robert, and perhaps other people; that the agreement or conspiracy was effective between February of 2021 through at least May of 2022; and that the object was -- of this conspiracy was to induce minors, people under the age of 18 years, to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct; that you pretended to be young women in social media accounts on the internet, contacted young boys under the age of 18 and encouraged, induced, caused them to produce sexually explicit images of themselves and send them to you as you were pretending to be young women and girls.  Once you got these

images you would then threaten the victims that if they didn't

pay money or blackmail, you would send these images to their

families, friends, classmates, and others.

Do you each understand what you're charged with in

Count 2? Samuel Ogoshi?

DEFENDANT SAMUEL OGOSHI: Yes, sir.

THE COURT: Samson Ogoshi?

DEFENDANT SAMSON OGOSHI: Yes.

THE COURT: In Count 3 the government charges you

with a conspiracy to distribute child pornography. Again, a

conspiracy is the same in this context, it's an agreement to

commit a crime. In this case the crime is distribution of

child pornography.

The government claims the same time period, also in

Marquette County here in the Northern Division of the Western

District of Michigan, and that the conduct that you engaged in

in Count 2 also would satisfy the elements of a conspiracy to

distribute child pornography because sexually explicit images

of a person under the age of 18 under U.S. law and under the

circumstances of this case constitute pornography.

The government claims that the three of you and,

again, maybe other people, conspired to distribute that child

pornography, to send it to your intended victims as part of

your blackmail scheme.

Do you understand what you're each charged with in

Count 3?  Samuel Ogoshi?

        DEFENDANT SAMUEL OGOSHI:  Yes, sir.

        THE COURT:  Samson Ogoshi?

        DEFENDANT SAMSON OGOSHI:  Yes, sir.

        THE COURT:  You are also charged together in Count 4. Count 4 charges you with conspiracy to commit stalking through the internet.  The government is again alleging that this conspiracy or criminal agreement took place in that same February '21 to May 2022 time period, also in the northern division of this district and elsewhere, and that the three of you, Samuel Ogoshi, Samson Ogoshi, and Ezekiel Robert conspired and agreed to use the internet, in essence, to harass and intimidate other people, your victims in this case, and engaged in a course of conduct that would reasonably cause those people to experience emotional distress.

        The background of this charge includes the government's allegation that some individual, I don't know whether this person is known to the government or not, they're not identified by name, hacked social media accounts, including Instagram accounts.  This person then sold the hacked accounts to people, including the three of you, the three defendants in this case.

        The government claims that you paid for this information by bank transfers and other means and used those hacked social media accounts to extort money from your

victims, including the victims in this case.

As I said earlier, the government claims that you would -- the three of you would pose as young women, girls, in attempt to lure boys and young male adults to engage in sexual chats; that in these chats you would attempt to convince them to produce sexually explicit images of themselves and send them to you using Instagram and other social media applications.  You would then, using Google and other online platforms, research information about your victims, including where they lived, where they went to school, where they worked, and who their family and friends were.

After receiving the sexually explicit images from the victims you would typically create a collage of pictures in which you would mix these sexually explicit pictures with other pictures you mined from the internet, and then threatening to disclose those to your victims, you would attempt to extort money from them.

You would often use the following language in those extortion attempts:  Hey, I have screenshot all your followers and tags and those that comment on your, u-r post.  I'm not going to translate.  I'm just going to read the words.  I can send this nudes to everyone and also send your nudes until it goes viral.  All you've to do is to cooperate with me and I will not expose you.

The victims, not surprisingly, would often comply by

sending money to you using Apple Pay, Zelle, and other cash application platforms.

The government claims that you contacted or attempted to contact more than a hundred boys and young men in furtherance of this conspiracy.

Samuel Ogoshi, the government claims that it was you that contacted victim number one in a very telling exchange the government claims was you and victim number one on one of these messaging platforms.

The government claims that after the excerpt I just read you, posing as a young girl named Dani Robertts, then said, Are you going to cooperate with me?  Just pay me right now and I won't expose you.  Victim number one responded, How much?  You said, A thousand dollars.  Victim number one then allegedly told you -- or only -- I'm sorry, only paid $300. You made more threats against him.

In an exchange on March 25, 2022, the government alleges the following conversation took place:  You, again posing as Dani Robertts:  Goodbye.  Enjoy your miserable life. Victim one, I'm kill myself right now.  Victim one, Because of you.  You posing as Dani Robertts:  Good.  Do that fast or I'll make you do it, I swear to God.  And, of course, tragically, victim number one took his own life.

Victim number two.  Samson Ogoshi, the government claims that you contacted victim two, made that same request

for sexually explicit photos or videos, that victim number two complied, and that you then attempted to extort $800 from him. Victim two responded that he had only $50 in Venmo and a hundred dollars in cash to which you responded -- and I'm cutting out some of the exchange -- Enjoy your miserable life. Victim two: Why? You: I'll make this go viral.

If I didn't make this clear you, too, the government claims, Samson Ogoshi, that you were also posing as this Dani Robertts character.

And, further, in the same exchange Samson Ogoshi, you said, I will make you regret your life. I will make you commit suicide. I promise you. I swear.

Do you each understand what you're charged with in Count 4? Samuel Ogoshi?

DEFENDANT SAMUEL OGOSHI: Yes, sir.

THE COURT: Samson Ogoshi?

DEFENDANT SAMSON OGOSHI: Yes, sir.

THE COURT: All right. Let's circle back to Count 1, then. Samuel Ogoshi, only you are named in this count, and it claims that on March 25, 2022, in Marquette County, again through the internet, of course, you induced victim one to produce and send you these sexually explicit images. You were posing as Dani Robertts. Victim one was about 17 at that time, 17 years old; that he did produce these images, sent them to you, and then you attempted to blackmail him as I

described a moment ago from excerpts of Count 4, and that
thereafter victim number one committed suicide.

Do you understand what you're charged with in Count
1?

DEFENDANT SAMUEL OGOSHI:  Yes, sir.

THE COURT:  All right.  Gentlemen, if you are
convicted there are penalties.  The penalties -- and they vary
by count.  I'm going to try to avoid redundancy to the extent
that I can in describing the penalties.

Counts 2 and 3, if you were convicted, you would be
required to register as a sex offender.  You would be ordered
to pay any restitution that the Court found warranted.  There
would be financial penalties, not fines but assessments in the
amount of $100, a second in the amount of $5,000.  On Count 3
a third up to 35,000, and on Count 2 a third up to $50,000.
Each of the -- those two charges also carry a fine of up to
$250,000.  Each carry a period of supervised release following
any prison term of -- from five years up to lifetime
supervised release.  And, of course, each include a period in
prison.

On Count 3, the conspiracy to distribute child
pornography count, there is a mandatory minimum prison term of
five years and a maximum term of 20 years.  On Count 2, the
conspiracy to exploit minors and the production of child
pornography, the minimum penalty is -- minimum prison term is

1   15 years, the maximum is 30 years.

2          On Count 4, the conspiracy to commit stalking through

3   the internet, there is mandatory restitution, a $100 special

4   assessment, supervised release of not more than three years, a

5   maximum fine of not more than $250,000, and a maximum prison

6   term of five years.

7          Samuel Ogoshi, on Count 1 there is the same sex

8   offender registration requirement as Counts 2 and 3, the same

9   restitution requirement, the same special assessments as Count

10  2, the same supervised release period as Count 2.  The fine is

11  the same but the prison term is different.  The minimum prison

12  term upon conviction of Count 1 would be not less than

13  30 years.

14         Mr. Mekaru, are you taking the lead here on this case

15  this afternoon?  Are you taking the lead here this afternoon

16  on this case?

17         MR. MEKARU:  I am, Your Honor.

18         THE COURT:  All right.  2250 -- United States Code

19  Section 2251 titled, Sexual Exploitation of Children, is the

20  statute under which the government is bringing this charge.  I

21  note for the record that section (e) of 2251 lays out

22  penalties for violating that statute, and the very last

23  sentence of sub-paragraph (e) provides; However, in the course

24  of an offense under this section, conduct that results in a

25  death of a person shall be punished by death or imprisoned for

not less than 30 years or for life.  I don't see that on the penalty sheet, Mr. Mekaru, and I'm wondering what the -- why that is?

MR. MEKARU:  Understood, Your Honor.  Your Honor, as the Court may be well aware, that if a case is death penalty eligible, that charge and the application of that possible penalty has to be reviewed by the capital crime section in the United States Department of Justice.

We have had this case reviewed by the capital crime section.  It's been then reviewed and referred to the United States Attorney General for final evaluation as to whether the United States government is going to seek the death penalty.  We are not.  We made the representation to the Nigerian government that we are not seeking the death penalty, and we make this representation to the Court as well as we made this representation to counsel that we are not seeking it in this case.  Because we are not, we didn't feel it was appropriate to put in the penalty sheet that that was a possible penalty that could be imposed.

THE COURT:  Okay.  Mr. Mekaru, then, the Attorney General has decided not to seek death in this case?

MR. MEKARU:  Yes, that is correct, Your Honor.

THE COURT:  Is that reduced to writing somewhere?

MR. MEKARU:  Internally, Your Honor.  We do make this representation to this Court to our penalty sheet, but this is

1  an internal discussion within the department.

2        THE COURT:  Can the Attorney General change his mind?

3        MR. MEKARU:  No, Your Honor.

4        THE COURT:  Is this memorialized, this agreement or

5  decision, is it part of the extradition agreement that allowed

6  you to bring Mr. Ogoshi here?

7        MR. MEKARU:  Your Honor, it was important to us and

8  we made a fair representation to the Nigerian government as to

9  what penalties could apply.  We secured the position from the

10 Attorney General before we sought extradition.  The

11 representation the United States government made to the

12 government of Nigeria is that we are not seeking the death

13 penalty.  That is in writing.  That was in our submission to

14 the Nigerian courts, and that is certainly a representation

15 that the United States government will honor.

16        THE COURT:  Okay.  Mr. Mekaru, under the Crime Victim

17 Rights Act, it looks to me like the Department of Justice may

18 be required to consult with the victim's family before

19 reaching this decision.  Was that done in this case?

20        MR. MEKARU:  It was, Your Honor.  It was important to

21 us to have that conversation, to speak with the family about

22 what sort of penalties could apply.  Certainly it does -- the

23 short answer is, yes, we did.

24        THE COURT:  All right.  And the family agreed with

25 this decision?

MR. MEKARU:  The family has a right to consult,
though they do not have veto authority one way or the other.
They understood the concerns about asking for the death
penalty.  I will share with you that they did not oppose our
recommendation to not seek the death penalty.

THE COURT:  All right.  I already asked you if the
Attorney General could change its mind and you said no.  I
would just be interested in what he would say if he was here
right now, but --

MR. MEKARU:  I make that statement, Your Honor, as a
representative of the Department of Justice, and certainly, I
mean, that is our marching orders.  The United States
government has made that commitment.  We have to be bound by
our commitment to the defendants, but certainly to the
Nigerian government.  It would cause a diplomatic complication
if the United States government would go back on its word, and
I just -- I cannot conceive a situation where that would ever
happen in this case.

THE COURT:  All right.  Let me pose such a situation.
What if there was a -- as there will be, possibly, a change in
administration in the future as a result of a political
process, could a new Attorney General change course on this
decision, and if so, what remedy would the defendants have --
or not the defendants, Mr. Samuel Ogoshi?

MR. MEKARU:  Your Honor, hypotheticals are, I think,

problematic in that we could venture down a path that is really not applicable, so as the Court is well aware, and setting this case aside, there have been instances where the United States and this Court has made representations about the possible penalties that could apply in a case, and in those instances if we were mistaken, if those penalties could be higher, we have, nonetheless, as the government felt bound to honor that commitment that that is the penalty in which we will seek, so what you're asking us to do is whether the United States would change its position to exponentially increase the possible penalty in a case where we made the representation as to what those penalties would be.  I cannot conceive that as being a proper process.  Could the government reduce the possible penalty?  If -- to engage in this hypothetical, if the government had sought the death penalty and a new administration came in and decided that it would want to forego that possible penalty, I can imagine a situation where that might be possible because the government would be seeking a lesser sanction as opposed to an increase.

THE COURT:  All right.  Fair enough.  A little unfair jumping you like that, but I wanted to get your thoughts.

MR. MEKARU:  It's an issue and I understand the Court's inquiry.

THE COURT:  All right.  Thank you, Mr. Mekaru.  I appreciate that.

MR. MEKARU:  Yes, Your Honor.

THE COURT:  All right.  So, I think I said, the -- maybe I didn't.  I got to the -- I announced the minimum and then questioned Mr. Mekaru about the maximum.

Mr. Samuel Ogoshi, it appears the United States has -- is setting the maximum sentence in your case at life in prison.  Having said that, do you now understand the potential maximum penalties in your case?

DEFENDANT SAMUEL OGOSHI:  Yes, sir.

THE COURT:  All right.  And I don't know if I asked, I can't remember if I asked you directly, Mr. Samson Ogoshi, do you understand the maximum penalties --

DEFENDANT SAMSON OGOSHI:  Yes, sir.

THE COURT:  -- on your charges?

DEFENDANT SAMSON OGOSHI:  Yes, sir.

THE COURT:  Okay.  All right.  Mr. Mekaru, I know this may seem like a foolish question, but what's the government's position on bond for these gentlemen?

MR. MEKARU:  Your Honor, we are seeking detention until resolution of this case.  We're also asking for three days to prepare for the hearing.

THE COURT:  Okay.  Under what section of 18 United States Code Section 3142(f) does the government claim it's entitled to a detention hearing?

MR. MEKARU:  With respect to Defendant Samuel Ogoshi,

there are actually three grounds.  This is a crime of violence by definition.  It's a crime of 3156.  This is also a charge that is pending where a maximum possible sentence is life under subsection C and then, last, subsection E, this is a felony charge involving a minor.

Now, the provisions that would apply to Samson Ogoshi, there only the two; this is by definition a crime of violence and an offense involving minor.

THE COURT:  All right.

MR. MEKARU:  These are also offenses which would trigger the presumption.

THE COURT:  All right.  I find based on the evidence before me that both defendants -- that the government is entitled to a detention hearing as to both defendants and time to prepare so we'll return here on Thursday at 3:00 p.m.

Gentlemen, at that time there will be three hearings set in your case.  The first will be an arraignment.  I'm going to go back over the charges and the penalties as I just did.  I'm going to talk to you about your constitutional rights, and then I'll ask your lawyers to enter pleas for you on each of the charges.  Now, presumably those pleas will be not guilty, but that's for you to discuss and decide with your lawyers.

The second hearing will be a pretrial conference.  Mr. Mekaru and Mr. Reust and perhaps others in their office

will put together a document called a pretrial summary statement.  In that document the United States will list the kinds of evidence it claims to have against you.

Now, your lawyers will get copies of the actual evidence or have the chance to review it, and after they do that I'm sure they'll sit down and go through all of that with you very carefully, but at least on Thursday you'll get an overview of what the evidence against you looks like.

And then the last matter we'll take up on Thursday will be a bond hearing.

Mr. Mekaru, unfortunately I have one last question for you.  This occurred to me as I was preparing for the hearing, and that is this question, has the U.S. successfully sought an enhanced penalty under 2251(e) against anyone else where the cause of death was suicide?

MR. MEKARU:  I can't speak for the universe, Your Honor.  All I know is to my knowledge, no.

THE COURT:  Okay.  Thank you.

MR. MEKARU:  Yes, sir.

THE COURT:  All right.  Gentlemen, that brings us to the end of your initial appearance and the end of our business together here today.

Mr. Mekaru, anything else from the United States?

MR. MEKARU:  No, Your Honor.  Thank you.

THE COURT:  You're welcome.  Mr. Tilton, anything

1    from you, sir?

2    MR. TILTON:  No, Your Honor.  Thank you.

3    THE COURT:  Ms. Kelly, anything from you?

4    MS. KELLY:  No, Your Honor.

5    THE COURT:  All right.  Samuel Ogoshi, Samson Ogoshi,

6    did you understand everything that happened in court today?

7    Samuel?

8    DEFENDANT SAMUEL OGOSHI:  Yes, sir.

9    THE COURT:  Samson?

10   DEFENDANT SAMSON OGOSHI:  Yes.

11   THE COURT:  Do you have any questions for me before I

12   adjourn your case?  Samuel?

13   DEFENDANT SAMUEL OGOSHI:  No, sir.

14   THE COURT:  Samson?

15   DEFENDANT SAMSON OGOSHI:  No, sir.

16   THE COURT:  All right, gentlemen.  We'll see you back

17   here on Thursday.  We're adjourned.

18   THE CLERK:  All rise.

19   *(Whereupon, hearing concluded at 4:30 p.m.)*

20

21

22

23

24

25

*C E R T I F I C A T E*

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ Genevieve A. Hamlin
Genevieve A. Hamlin, CSR, RMR, CRR
U.S. District Court Reporter
Grand Rapids, MI 49503