```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE WESTERN DISTRICT OF MICHIGAN

 3                         SOUTHERN DIVISION

 4      UNITED STATES OF AMERICA,

 5               Plaintiff,         No:  2:22cr25

 6       vs.

 7      SAMUEL OGOSHI,
        SAMSON OGOSHI,
 8
                 Defendants.
 9


10
        Before:
11
                          THE HONORABLE RAY KENT
12                         U.S. Magistrate Judge
                           Grand Rapids, Michigan
13                       Thursday, August 17, 2023
                        Detention Hearing Proceedings
14
        APPEARANCES:
15
                    MR. MARK A. TOTTEN, U.S. ATTORNEY
16                  By:  MR. DANIEL Y. MEKARU
                    MR. DAVIN REUST
17                  330 Ionia Avenue, NW
                    P.O. Box 208
18                  Grand Rapids, MI 49501-0208
                    (616) 456-2404
19
                            On behalf of the Plaintiff;
20
                    FEDERAL PUBLIC DEFENDER
21                  By:  MR. SEAN TILTON
                    50 Louis Street, NW, Suite 300
22                  Grand Rapids, MI 49503-2633
                    (616) 742-7420
23
                            On behalf of Samuel Ogoshi.
24

25
```

```
 1                    Willey & Chamberlain LLP
                      MS. JULIA ANNE KELLY
 2                    300 Ottawa Avenue, NW, Suite 810
                      Grand Rapids, MI 49503
 3                    (616) 458-2212

 4                           On behalf of Samson Ogoshi.

 5      TRANSCRIBED BY:   MR. PAUL G. BRANDELL, CSR-4552, RPR, CRR

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | 08/17/2024 |
| 2 | 3:12 p.m. |
| 3 | THE CLERK: The United States District Court District |
| 4 | Court for the Western District of Michigan is now in session. |
| 5 | The Honorable Ray Kent, United States Magistrate Judge, |
| 6 | presiding. Please be seated. |
| 7 | THE COURT: This is 22cr25, United States versus |
| 8 | Samuel Ogoshi and Samson Ogoshi. Mr. Mekaru, Mr. Reust on |
| 9 | behalf of the United States. I notice you guys have switched |
| 10 | seats. Does that indicate anything of significance to me? |
| 11 | MR. REUST: I am handling this hearing, Your Honor. |
| 12 | THE COURT: Okay. Mr. Tilton, Ms. Kelly on behalf of |
| 13 | Defendants. Three matters set for hearing. The first an |
| 14 | arraignment, the second a pretrial conference, and the third a |
| 15 | bond hearing. |
| 16 | Gentlemen, ordinarily I would never refer to a party |
| 17 | by their first name, but because you are brothers and you have |
| 18 | the same last name, in order to keep the record clear I will be |
| 19 | calling you by your first names today. All right. When we |
| 20 | were here last time you both asked for court appointed lawyers |
| 21 | and I appointed Mr. Tilton and Ms. Kelly to represent you. |
| 22 | Have you had a chance now to meet with them and discuss the |
| 23 | case? Samuel? |
| 24 | DEFENDANT SAMUEL OGOSHI: Yes, sir. |
| 25 | THE COURT: Samson? |

1     DEFENDANT SAMSON OGOSHI:  Yes, sir.
2     THE COURT:  Mr. Tilton, will Samuel waive the reading
3 of the indictment if I summarize the charges?
4     MR. TILTON:  Yes, Your Honor.  I have read it to him.
5     THE COURT:  Okay.  Ms. Kelly, will Samson?
6     MS. KELLY:  Yes, Your Honor.
7     THE COURT:  All right.  All right.  As we covered last
8 time, Gentlemen, the government is bringing three criminal
9 charges in common against both of you, and one additional
10 charge against Samuel only.  The three common charges are
11 contained in Counts 2, 3 and 4 of the indictment.  They also
12 include Ezekiel Robert, who has not yet appeared in this
13 matter.
14     In Count 2 the government charges a conspiracy to
15 sexually exploit minors.  It alleges that some time prior to
16 February of 2021, continuing through at least May of 2022, in
17 Marquette County and other places, the Defendants conspired or
18 agreed to induce minors to engage in sexually explicit conduct
19 for the purpose of producing visual depictions of that conduct.
20 The Defendants pretended to be young women in social media
21 accounts, and in that way lured the boys into engaging in
22 sexually explicit conduct.  Once the boys had produced and sent
23 images of the -- of that conduct to the Defendants, the
24 Defendants used those images to blackmail them for money.
25     Gentlemen, do you understand the charge in Count 2,

1  Samuel?

2  DEFENDANT SAMUEL OGOSHI:  Yes, sir.

3  THE COURT:  Samson?

4  DEFENDANT SAMSON OGOSHI:  Yes, sir.

5  THE COURT:  Count 3 charges conspiracy to distribute
6  child pornography.  It alleges the conduct took place in that
7  same time period, same place, and in this Count the government
8  alleges that the two of you and Mr. Robert conspired to
9  distribute child pornography, in other words, conspired to or
10 threatened to distribute the sexually explicit images which you
11 deceived the victims into producing in order to blackmail them.

12 Do you understand Count 3, Samuel?

13 DEFENDANT SAMUEL OGOSHI:  Yes, sir.

14 THE COURT:  Samson?

15 DEFENDANT SAMSON OGOSHI:  Yes, sir.

16 THE COURT:  Count 4 is a conspiracy to commit stalking
17 through the Internet.  It's longer.  It's a little more
18 involved, but it relies on the same facts.  Alleges that it
19 took place during the same time period, also here in the
20 Western District of Michigan, and that as part of your overall
21 conspiracy you agreed to use the Internet basically to attempt
22 to blackmail these boys into giving you money, and you did that
23 by threatening to expose or show the boy's family, friends,
24 others, the images which you had lured them into making, which
25 would have, of course, caused any reasonable person to

1  experience emotional distress.
2          We went through the specific actions which the
3  government alleges you committed in achieving this conspiracy
4  to commit stalking.
5          Do you understand what you are charged with in Count
6  4, Samuel?
7          DEFENDANT SAMUEL OGOSHI:  Yes, sir.
8          THE COURT:  Samson?
9          DEFENDANT SAMSON OGOSHI:  Yes, sir.
10         THE COURT:  Okay.  And then Samuel, as you know, you
11 are also charged alone in Count 1 with sexual exploitation of a
12 minor resulting in death.  The government claims on March 25 of
13 2022, in Marquette County, you induced the victim in this case,
14 who was at that time a minor, using the pseudonym dani.robertts
15 pretending to be a girl.  You induced the victim to produce
16 sexually explicit images of himself, which he then sent to you.
17 After you got them you threatened to blackmail him.  He did not
18 have enough money to pay the blackmail you asked for and later
19 committed suicide.
20         Do you understand the charge in Count 1?
21         DEFENDANT SAMUEL OGOSHI:  Yes, sir.
22         THE COURT:  There are penalties which we also went
23 through last time but we'll go through again.  Counts -- I am
24 going to jump around a little bit to cover what's common
25 between various counts.  So Counts -- if you were convicted on

1  Counts 1, 2 or 3, you would be required to register as a sex
2  offender.  You would be required to pay restitution, which is
3  also required by Count 4.  So all of the Counts require
4  restitution.  All of the Counts have special assessments,
5  financial consequences linked to them.  Each has a special
6  assessment of $100.  Each -- with the exception of Count 4,
7  each has an additional assessment of $5,000.  Count 1 has a
8  third special assessment of up to $50,000.  Count 2 a third of
9  up to $50,000, and Count 3 a third of up to $35,000.  Each has
10 a fine, which is a separate kind of financial consequence, of
11 up to $250,000.
12         Each has a period of supervised release following any
13 prison term.  On Count 4 that period is not more than three
14 years.  The other three Counts all have a minimum period of
15 supervised release of five years and a maximum period of
16 supervised release of up to life.
17         And finally, each of the charges carries a prison
18 term.  Count 1, which, of course, is directed at Samuel only,
19 has a mandatory minimum prison term of three -- of 30 years.
20 Minimum term of 30 years, maximum of life in prison.  Count 2,
21 a minimum prison term of 15 years, a maximum of 30.  Count 3, a
22 minimum prison term of five years, a maximum of 20, and
23 finally, Count 4 has a -- has no minimum term, a maximum of
24 five years.
25         Gentlemen, do you understand the penalties?  Samuel?

1           DEFENDANT SAMUEL OGOSHI:  Yes, sir.
2           THE COURT:  Samson?
3           DEFENDANT SAMSON OGOSHI:  Yes, sir.
4           THE COURT:  You have important constitutional rights
5   in this case.  When we were here last I talked to you about a
6   couple of them.  Your right to remain silent, your right to a
7   lawyer, which you both have.
8           You have other equally important rights, including the
9   right to be presumed innocent, the right to have the government
10  prove you guilty beyond a reasonable doubt on each and every
11  element of these charges.  That would occur at a speedy and
12  public trial before 12 jurors drawn from the community.  At
13  trial you would have the right, through your lawyers, to
14  confront and cross examine the government's witnesses, to call
15  your own witnesses and have the Court order them to appear and
16  testify.  You would have the right to present other evidence
17  which you believed demonstrates you are not guilty of these
18  charges.  And finally, you would have the right to either take
19  the witness stand and testify in your own defense or remain
20  silent and not have your silence used against you in any way.
21          We are going to project up on the screen now a form
22  which summarizes your constitutional rights.  We have one for
23  each of you.  This one looks like it's for you, Samuel.  Is
24  that your signature near the bottom of the form?
25          DEFENDANT SAMUEL OGOSHI:  Yes, sir.

1   THE COURT:  Did you read and understand the form
2   before you signed it?
3   DEFENDANT SAMUEL OGOSHI:  Yes, sir.
4   THE COURT:  Do you understand the rights you have in
5   this case?
6   DEFENDANT SAMUEL OGOSHI:  Yes, sir.
7   THE COURT:  All right.  Samson, we are going to put
8   your form up now.  Is that your signature at the bottom of your
9   form?
10  DEFENDANT SAMSON OGOSHI:  Yes, sir.
11  THE COURT:  Did you also read and understand the form
12  before you signed it?
13  DEFENDANT SAMSON OGOSHI:  Yes, sir.
14  THE COURT:  Do you understand the constitutional
15  rights you have in this case?
16  DEFENDANT SAMSON OGOSHI:  Yes, sir.
17  THE COURT:  Gentlemen, there are four ways that you
18  can plead to these charges.  The first way is not guilty.
19  Second, you could say nothing.  We call that standing mute.  If
20  you did that I would enter a not guilty plea for you on each of
21  the charges.  Third, you could plead guilty, and fourth, with
22  the consent of Judge Robert Jonker, who is the trial judge in
23  your case, and the consent of Mr. Reust, you could plead
24  something called no contest, which has essentially the same
25  effect as a guilty plea.

```
 1                Do you understand your four options, Samuel?
 2                DEFENDANT SAMUEL OGOSHI:  Yes, sir.
 3                THE COURT:  Samson?
 4                DEFENDANT SAMSON OGOSHI:  Yes, sir.
 5                THE COURT:  I am going to ask your lawyers now to
 6   enter pleas for you on these charges.  Mr. Tilton?
 7                MR. TILTON:  Not guilty on all counts, Your Honor.
 8                THE COURT:  All right.  A not guilty plea will be
 9   entered on all counts.
10                MS. KELLY:  Not guilty on all counts.  Thank you.
11                THE COURT:  Yeah.  You are welcome.  Not guilty pleas
12   will be entered for Samson as well.
13                Gentleman, that concludes the arraignment.  We are
14   going to turn now to the pretrial conference.  Your lawyers
15   filed a pretrial form with me before court.  In that form each
16   of them is asking that if your case goes to trial it be a trial
17   by jury.  Each of them has agreed on your behalf to provide the
18   government any information which you are obligated by law to
19   provide.  There isn't very much of that.  And each of your
20   lawyers has asked the government to disclose whether it intends
21   to offer evidence under Federal Rule of Evidence 404(b), which
22   allows the introduction of evidence of conduct or actions other
23   than that charged in the case for a limited number of reasons
24   and under a limited number of circumstances.
25                Mr. Reust, questions for Mr. Tilton?
```

1         MR. REUST:  No, Your Honor.  Thank you.
2         THE COURT:  You are welcome.  Questions for Ms. Kelly?
3         MR. REUST:  Also no, Your Honor.  Thank you.
4         THE COURT:  All right.
5         Yes.  The government also filed a pretrial summary
6    statement with me.  Mr. Reust, I didn't go through and compare
7    them.  Are they identical?
8         MR. REUST:  They are not identical.  They are fairly
9    similar.
10        THE COURT:  Okay.  Well, we'll go through them
11   separately in that case, starting with Samuel.
12        Now, Samuel, Mr. Tilton is going to get copies of all
13   the actual evidence or have the chance to review it.  And after
14   he does that I'm sure he'll sit down and go through all that
15   with you carefully, but what follows will be a summary of what
16   the evidence in your case looks like.
17        The government claims that it has written records of
18   oral statements made by you, in other words, things you said.
19   Those are contained in a report summarizing an interview of you
20   by the FBI in Lagos, Nigeria, on February 8 of this year.
21   Statements -- summaries of statements made by you as a result
22   of your arrest and during your transport from Nigeria here to
23   Grand Rapids, Michigan, earlier this month.  The government
24   also claims to have written or recorded statements by you,
25   including an interview of you in Lagos on that same date,

1   February 8, recordings of statements you made during your
2   transport, images, chat logs and messages shown to you during
3   that -- the interview, which you recognized and initialed,
4   statements made by you in chats with victims of sextortion and
5   with co-conspirators. Kind of a kitschy word. I don't know.
6   I mean, it's extortion. I mean, sextortion seems a -- I don't
7   know. I might have chosen a different word. But also in
8   signed statements of yours, in signed consents to answer
9   questions without a lawyer present on August 8 and February 12
10  of this year, and a signed consent to search WhatsApp for
11  evidence.
12          The government has looked and not found any prior
13  criminal conduct by you.
14          The government claims to have other evidence,
15  including documents obtained in response to subpoenas and
16  search warrants, chat logs, e-mail records and financial
17  records, as well as your cell phone and images and messages
18  shown to you during the interview, which we talked about a few
19  moments ago.
20          There were a number of search warrants executed in the
21  case, federal search warrants, including for information from
22  Apple, several search warrants to Apple, several to Google, it
23  looks like at least a couple to Yahoo, and three to WhatsApp,
24  Facebook, AT&T and Sprint. Telephone -- the two phones were
25  looking for location information.

1   The search warrants, the returns, and an inventory of
2   any evidence seized will be part of the information provided to
3   your lawyers.
4   The government expects to have written reports
5   following computer forensic examination. Typically this would
6   be of cell phones, laptops, that sort of thing, looking for
7   evidence such as text messages, e-mails, photographs, that sort
8   of thing. The medical examiner's report concerning the victim
9   will also -- is also part of the evidence packet in this case.
10  In response to Mr. Tilton's question about 404(b), the
11  government does intend to offer evidence that you continued to
12  engage in this extortion conduct after the time period charged
13  in the indictment for a number of reasons, which are allowable
14  under Rule 404(b). I am sure Mr. Tilton will look that over
15  carefully, talk to you about and take whatever action is
16  appropriate.
17  The government will also introduce evidence that
18  co-conspirators hacked social media accounts and coordinated
19  payments from the victims of your conspiracy. That evidence
20  may also be admissible for other reasons. Again, Mr. Tilton
21  will keep an eye on that for you I am sure.
22  The government is also asking for a jury trial.
23  Estimates it'll last eight to ten days.
24  Finally, there is a plea negotiation policy. If you
25  intend to have Mr. Tilton try to negotiate a plea bargain for

**1**  you, it would have to be finalized at least one month before
**2**  the final pretrial conference in this matter.  Now, Mr. Tilton
**3**  will keep a close eye on that date and all the other dates for
**4**  you, and I am sure he'll talk to you about whether or not it
**5**  makes sense to attempt a plea bargain given your specific
**6**  situation.
**7**  Mr. Tilton, questions for Mr. Reust?
**8**  MR. TILTON:  None at this time, Your Honor.
**9**  THE COURT:  All right.  All right.  Samson, let's take
**10**  a look at yours.  It looks like many of the same things.  A
**11**  report summarizing an FBI interview of you on February 8 in
**12**  Lagos, statements made during your arrest and transport, a
**13**  recorded interview on February 8 in Lagos, which the government
**14**  claims you made certain admissions, recordings made by you
**15**  during transport, statements made by you in chats with victims
**16**  and co-conspirators, your signed consent to answer questions
**17**  without a lawyer present on a couple of dates, and a signed
**18**  consent to search a WhatsUp -- I'm sorry, a WhatsApp account.
**19**  The government has looked in your past and also found
**20**  no evidence of prior criminal activity.
**21**  The government has similar and probably in many cases
**22**  identical other evidence, including documents obtained in
**23**  response to subpoenas and search warrants, chat logs, e-mail
**24**  records, financial records, evidence in your cell phone, images
**25**  and messages shown to you during your interview.

1 　　　　　Are the search warrants the same, Mr. Reust, or are
2 there also some differences there?
3 　　　　　MR. REUST:  Those are the same, Your Honor.
4 　　　　　THE COURT:  Okay.  The same list of search warrants
5 that I read to your brother, Samuel, a moment ago, and the same
6 written reports.
7 　　　　　The government also intends to offer the same type of
8 evidence against you under 404(b) that it's given notice of to
9 your brother.  Obviously, the jury trial eight to ten days, and
10 the plea negotiation policy is the same for you as it is for
11 your brother.  Ms. Kelly, questions for Mr. Reust?
12 　　　　　MS. KELLY:  No, Your Honor.  Thank you.
13 　　　　　THE COURT:  Mr. Reust, I am going to read the
14 government the 5(f) notice now.  Pursuant to the Due Process
15 Protections Act the Court reminds the government of its
16 obligations under the 1963 United States Supreme Court case of
17 Brady versus Maryland to disclose evidence favorable to the
18 Defendant and material to the Defendant's guilt or punishment.
19 The government is ordered to comply with Brady and its progeny.
20 The failure to do so in a timely manner may result in
21 consequences including dismissal of the indictment or
22 information, exclusion of government evidence or witnesses,
23 adverse instructions, dismissal of charges, contempt
24 proceedings, sanctions by the court or any other remedy that is
25 just under the circumstances.

1              Mr. Reust, does the government commit to honoring its
2     obligations under Brady and the act?
3              MR. REUST:  Absolutely, Your Honor.
4              THE COURT:  Thank you.  All right.  Gentlemen, that
5     concludes the pretrial conference, leaving only the question of
6     bond.
7              Mr. Reust, is the government prepared to proceed on
8     bond?
9              MR. REUST:  Yes, Your Honor.
10             THE COURT:  Mr. Tilton, I have been told that you are
11    seeking an adjournment?
12             MR. TILTON:  That's correct, Your Honor.
13             THE COURT:  And Ms. Kelly, you have joined in that
14    request?
15             MS. KELLY:  Yes, Your Honor.
16             THE COURT:  All right.  Anything else you want to say
17    about that?
18             MR. TILTON:  I can make a record if you'd like?
19             THE COURT:  If you wouldn't mind a brief record.
20             MR. TILTON:  Your Honor, 18 US v 3142(f) allows for
21    continuance of the bond hearing of up to five days by the
22    Defendant at Defense request and then beyond that for good
23    cause.  I think that there is certainly good cause here.  There
24    is a rebuttable presumption for both Defendants.  The
25    Defendants are from Nigeria.  We were appointed to represent

1  them three days ago, and there is still much investigation for
2  our offices to do. We have been trying to reach the family in
3  Nigeria, and it's taking longer to get in contact with all the
4  family members and to be prepared for a hearing today.
5      Additionally, there are complex issues related to
6  their immigration status or their status with ICE related to
7  their extradition, and we believe it would be in the best
8  interests of our clients and for the Court's benefit if we had
9  additional time to brief some of those issues as to what might
10 happen with them if the Court did order a bond in this case.
11     So I think there is certainly good cause for at least
12 a brief adjournment here so we can complete our investigation
13 and submit briefs to the Court.
14     THE COURT: All right. Thank you, Mr. Tilton.
15     Mr. Reust, I have been told the government does not
16 oppose a continuance until Wednesday at 10:30?
17     MR. REUST: Your Honor, that's ultimately correct. I
18 do believe we could probably proceed and the Court could decide
19 the dangerousness issue, but I understand the Defense wants
20 time to investigate and respect that contacting the Defendants'
21 family may be difficult.
22     THE COURT: All right. Okay. We will adjourn, then,
23 the bond hearing till Wednesday of next week, August 23rd at
24 10:30 a.m.
25     Gentlemen, that concludes our business together here

```
 1    today.
 2              Mr. Reust, anything else from the United States?
 3              MR. REUST:  No, Your Honor.  Thank you.
 4              THE COURT:  Mr. Tilton, anything from you, sir?
 5              MR. TILTON:  No, Your Honor.  Thank you.
 6              THE COURT:  Ms. Kelly?
 7              MS. KELLY:  No, Your Honor.  Thank you.
 8              THE COURT:  Samuel, did you understand everything that
 9    happened in Court today?
10              DEFENDANT SAMUEL OGOSHI:  Yes, sir.
11              THE COURT:  Any questions for me before I adjourn your
12    case?
13              DEFENDANT SAMUEL OGOSHI:  No, sir.
14              THE COURT:  All right.  Samson, did you understand
15    everything that happened in Court?
16              DEFENDANT SAMSON OGOSHI:  Yes, sir.
17              THE COURT:  Is that a yes?
18              DEFENDANT SAMSON OGOSHI:  Yeah.  Yeah.  Yeah.
19              THE COURT:  Any questions for me?
20              DEFENDANT SAMSON OGOSHI:  No.  No.
21              THE COURT:  Okay.  We will be adjourned.
22              (Proceeding concluded, 3:36 p.m.)
23
24
25
```

C E R T I F I C A T E

    I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/ _____

Paul G. Brandell, CSR-4552, RPR, CRR

U.S. District Court Reporter

399 Federal Building

Grand Rapids, MI   49503