UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
- - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 2:22-CR-25 |
| v. | |
| SAMUEL OGOSHI, | Hon. ROBERT J. JONKER |
| Defendant. | U.S. District Judge |
| _____/ | |

## PLEA AGREEMENT

This constitutes the plea agreement between Samuel Ogoshi and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.      <u>Defendant Agrees to Plead Guilty.</u>  Defendant agrees to plead guilty to Count 2 of the Indictment.  Count 2 charges Defendant with Conspiracy to Sexually Exploit Minors in violation of Title 18, United States Code, Section 2251(a) and (e).

2.      <u>Defendant Understands the Crime.</u>  In order for Defendant to be guilty of violating Title 18, United States Code, Section 2251(a) and (e), the following must be true:

      a.  Two or more persons conspired or agreed to commit the crime of sexual exploitation of minors, and

      b.  Defendant knowingly and voluntarily joined the conspiracy.

Defendant is pleading guilty because Defendant is guilty of the charge described above.

3. <u>Defendant Understands the Penalty</u>. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 2251(a) and (e), is the following:

     a.    maximum term of imprisonment: 30 years;
     b.    minimum term of imprisonment: 15 years;
     c.    maximum term of supervised release: life;
     d.    minimum term of supervised release: 5 years;
     e.    maximum fine: $250,000;
     f.    mandatory special assessment: $100;
     g.    additional special assessment of $5,000; and
     h.    additional special assessment of up to $50,000.

4. <u>Supervised Release Defined</u>. Supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements. Defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

5. <u>Registration</u>. Defendant acknowledges and agrees that Defendant must register as a sex offender in all applicable jurisdictions, including, but not limited to the jurisdictions where Defendant was convicted, resides, works, and attends school. Defendant understands that failure to register may subject him to prosecution.

6. <u>Removal from the United States</u>. Defendant understands that the conviction in this case may subject Defendant to removal from the United States, denial of citizenship, and/or denial of admission to the United States in the future.

7. <u>Restitution</u>. Defendant understands that he will be required to pay full

2

restitution as required by Title 18, United States Code, Sections 2259, 3663, and 3663A. Defendant agrees that the restitution order is not restricted to the victims or conduct alleged in Count 2 of the Indictment to which Defendant is pleading guilty. Pursuant to 3663(a)(3), Defendant agrees to pay restitution for losses to all of the victims of his sexual exploitation and financial extortion offenses, including, but not limited to, the following:

     a.  Jordan DeMay's family,

     b.  all victims of Count 2 and the sexual exploitation of minors,

     c.  all victims of Count 4 and the conspiracy to commit stalking through the internet, including, but not limited to Victims 2 and 3; and

     d.  all victims of the conspiracy and offense of financial extortion as related to Counts 2 and 4 of the Indictment.

Defendant agrees that the Court will use Title 18, United States Code, Section 2259 when imposing restitution for any victims of dismissed or uncharged sexual exploitation offenses and Title 18, United States Code, Section 2264 for any dismissed or uncharged stalking offenses. The parties currently do not know the amount of restitution, but recognize and agree that the amount will be determined by the Court at sentencing. Defendant agrees to pay restitution to the fullest extent possible at the time of sentencing based on his financial ability.

     Defendant also:

     a.  agrees to fully and truthfully complete and return the financial disclosure form the U.S. Attorney's Office provides, including any

waivers, consents, or releases requested to access records to verify the financial information within 30 days of the date of this plea agreement;

b. agrees that any restitution or other criminal monetary penalties imposed by the Court shall be due and payable immediately, any payment plan set by the Court represents a minimum payment obligation, and the United States may immediately enforce the judgment in full; and

c. agrees that prior to sentencing, he will not sell or give away any asset worth $5,000 or more, without permission of the U.S. Attorney's Office. Defendant also agrees to notify the U.S. Attorney's Office of any proceeding, such as foreclosure or divorce, that may impact Defendant's financial condition.

8.     Factual Basis of Guilt. Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

Prior to February 2021, and continuing through January 2023, Samuel Ogoshi, Samson Ogoshi, Ezekiel Ejehem Robert, and others (the "co-conspirators") knowingly conspired to sexually exploit and extort more than one hundred victims, including at least eleven identified minor victims.  Generally, the co-conspirators purchased hacked Instagram accounts and used them to pose as young women, making fake profiles with the hacked accounts and using the messaging feature on Instagram to

4

contact victims. The co-conspirators shared ideas about how to pass as a young woman in conversations and discussed how to chat with teenage boys and young adult men. When one co-conspirator initiated a chat conversation with a victim, the others simultaneously used Google and other online applications to research information about the victim, including where he lived, attended school, worked, and the identities of his friends and family. The co-conspirators then solicited the victim to produce and send sexually explicit images of himself. In at least eleven instances, the co-conspirators induced minor victims to produce images of themselves engaging in sexually explicit conduct, including acts of masturbation. One of the minor victims was fifteen years old at the time. Once the co-conspirators received sexually explicit images, they created a collage of pictures that included the sexually explicit image with other images of the victim from social media, including images of the victim's school, family, and friends. The co-conspirators then threatened to disclose the collages to the family, friends, and classmates of the victim unless the victim agreed to pay money. In multiple instances, the co-conspirators actually distributed the collages that included sexually explicit depictions to others as part of the extortion scheme. Samuel Ogoshi, Samson Ogoshi, and Ezekiel Ejehem Robert instructed the victims to send money using Apple Pay, Zelle, and other payment applications. Another individual facilitated and managed the financial accounts that were used to receive the funds from the victims and send the funds to the co-conspirators.

Samuel Ogoshi purchased a hacked account and used it to create a fake profile with the display name "Dani Robertts." On March 25, 2022, all the co-conspirators

were simultaneously logged into the Dani Robertts account. One individual (not charged in the Indictment) made initial contact with Jordan DeMay and convinced Jordan DeMay to send a sexually explicit image. Samuel Ogoshi took a picture of the image with his phone and shared the image with the others to make the collage used to extort Jordan DeMay. Samson Ogoshi then took over the communication and began pressuring Jordan DeMay for money, and Jordan DeMay sent $300. Ezekiel Ejehem Robert then took over the final conversation to put more pressure on Jordan DeMay. When Jordan DeMay threatened to kill himself, Ezekiel Robert told him to do it. The co-conspirators split the $300 equally. When they later heard that Jordan DeMay had committed suicide, Samuel Ogoshi conducted online research, including Google searches for "Michigan news," "Michigan suicide," "is suicide a sin," "Instagram blackmail death," "how your ip address can be traced," and "how can fbi track my ip from another country." At the time of the conspiracy, Samuel Ogoshi, Samson, Ogoshi, and Ezekiel Ejehem Robert were citizens of and living in the country of Nigeria.

Defendant admits that he knowingly agreed with Samson Ogoshi and Ezekiel Robert to use Instagram to induce or entice minor boys and young men to produce sexually explicit images of themselves. Defendant acknowledges that Instagram operates in and affecting the internet and that the internet operates in and affecting interstate and foreign commerce.

9. <u>Cooperation in Criminal Investigations</u>. Defendant agrees to fully cooperate with the Federal Bureau of Investigation, the U.S. Attorney's Office, and

any other law enforcement agency in their investigation of the charges contained in the Indictment, as well as the investigation of crimes over which they have actual or apparent jurisdiction. Defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete, and truthful statement concerning Defendant's knowledge of any and all criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in Defendant's possession or under Defendant's control, including, but not limited to, objects, documents, and photographs. Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which Defendant should reasonably know will assist in the investigation of other criminal activity. Defendant will not commit any criminal offense during the course of his cooperation with the United States. Defendant has submitted to a polygraph examination and agrees to submit to any additional polygraph examination upon request. Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

10. <u>Agreement by the U.S. Attorney's Office</u>.

a. <u>Dismissal of Other Counts/Charges</u>. The U.S. Attorney's Office agrees to move to dismiss the remaining counts of the Indictment against

Defendant at the time of sentencing. Defendant agrees, however, that in determining the sentence the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within the applicable guidelines range, and the propriety of any departure from the calculated guidelines range. By this agreement, Defendant does not concede that an increased sentence or an upward departure is, in fact, warranted.

b. <u>Acceptance of Responsibility</u>. The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

c. <u>Protection for the Proffered/Cooperative Statements</u>. The U.S. Attorney's Office agrees that information provided by Defendant through Defendant's proffers, and any information provided pursuant to Defendant's promise to cooperate as described in this agreement, will not be used by the Government to enhance Defendant's sentence, in

8

accordance with Sentencing Guidelines § 1B1.8, and according to the terms of the written agreement entered into between the parties immediately prior to the proffers. It is expressly understood, however, that such information may be used by the Government at sentencing if Defendant takes a position at sentencing that contradicts information provided by Defendant pursuant to this agreement or any proffer agreement.

d. <u>Possibility of Sentence Reduction Motions</u>. The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to Sentencing Guidelines § 5K1.1, 18 U.S.C. § 3553(e), and/or Rule 35(b) of the Federal Rules of Criminal Procedure. Defendant fully understands that such a motion may be made pursuant to law if, and only if, Defendant fully cooperates with the Government and materially and substantially assists the Government in the investigation or prosecution of others. The determinations of whether Defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, and of which type of motion to file, will be made in the sole discretion of the U.S. Attorney's Office. Defendant fully understands that this paragraph is not a promise by the Government to file a motion for departure or to reduce a sentence. Additionally, Defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or

deny the motion. Furthermore, if the Court were to grant the motion, the Court, not the government, would decide how much of a departure or sentence reduction Defendant receives based upon the nature and extent of Defendant's assistance. Defendant understands that any departure or sentence reduction will be limited by the statutory mandatory minimum unless the Government files a written motion to release the mandatory minimum. Defendant acknowledges and agrees that he may not appeal the Court's exercise of its discretion in granting or denying a motion for departure or reduction of sentence, if such a motion is made.

11. <u>There is No Agreement About the Final Sentencing Guidelines Range</u>. Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

12. <u>Waiver of Trial Rights</u>. By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

a.    The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

b.    The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

c.    The right to confront and cross-examine witnesses against Defendant.

d.    The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e.    The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

f.    By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

13.   <u>Waiver of Other Rights</u>.

a.   <u>Waiver</u>.  In exchange for the promises made by the government in entering this plea agreement, Defendant waives all rights to appeal or collaterally attack Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

11

b.   <u>Exceptions</u>.  Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

        i.     Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

        ii.     Defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

        iii.     the guilty plea was involuntary or unknowing;

        iv.     an attorney who represented Defendant during the course of this criminal case provided ineffective assistance of counsel.

If Defendant appeals or seeks collateral relief, Defendant may not present any issue in the proceeding other than those described in this subparagraph.

14.   <u>The Court is not a Party to this Agreement</u>.  Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.  Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all of his obligations under this agreement. Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory minimum and maximum.

15. <u>This Agreement is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by Defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

16. <u>Consequences of Breach</u>. If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

*This space intentionally left blank.*

13

17.   <u>This is the Complete Agreement</u>.  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.  No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

MARK A. TOTTEN
United States Attorney

_____4/4/24_____

Date

DANIEL Y. MEKARU
DAVIN M. REUST
Assistant United States Attorneys

I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  No promises or inducements have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

4 / 4 / 2024
Date

SAMUEL OGOSHI
Defendant

I am Samuel Ogoshi's attorney.  I have carefully discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement.  To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

4 / 4 / 2024
Date

SEAN R. TILTON
Attorney for Defendant

14