UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

UNITED STATES OF AMERICA,

       Plaintiff,                              Case No. 2:22-cr-25-01

v.                                             Hon. Robert J. Jonker
                                                     United States District Judge

SAMUEL OGOSHI

       Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM AND BRIEF IN SUPPORT OF MOTION FOR DOWNWARD VARIANCE**

On September 5, 2024, Samuel Ogoshi will stand before this Honorable Court to be sentenced for conspiracy to sexually exploit minors in violation of 18 U.S.C. § 2251(a), (e). Mr. Ogoshi has received the Presentence Investigation Report (PSR) and met with counsel to discuss it. (ECF No. 78, PSR, PageID.683-732). Mr. Ogoshi has no outstanding objections to the advisory guideline range, as he believes the adjusted offense level is correct and that he is in criminal history category I. He withdraws his remaining objections to the PSR. He is requesting a sentence below his advisory sentencing guideline range and concurs with the presentence writer's analysis in paragraphs 234 and 235.

As the Court is aware, the principle and basic mandate of 18 U.S.C. § 3553(a) requires this Honorable Court to impose a sentencing "sufficient, but not greater than necessary" to comply with the four (4) purposes in § 3553(a)(2):

    **§ 3553. Imposition of a sentence.**

    **(a)**     **Factors to be considered in imposition of a sentence.** – The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes

> set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner…

18 U.S.C. § 3553(a)(2).

In *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006), the Court held that after *United States v. Booker*, 543 U.S. 220 (2005), a judge must impose the lowest sentence that is "minimally sufficient" to meet those goals regardless if that sentence is probation, time served, a mandatory minimum sentence, the statutory maximum, or somewhere between.

### a. History and characteristics of Samuel Ogoshi

Samuel Ogoshi is 24 years old and has no prior criminal history. He was a college student at the time of this offense. Mr. Ogoshi has pleaded guilty and expressed remorse for this offense. He is sorry for committing this offense and apologizes to the victims. Upon arrest, he provided admissions to the Nigerian Economic and Financial Crimes Commission (EFCC) and Federal Bureau of Investigation (FBI). He is cooperating with the government and passed two polygraph tests about his involvement in the offense. He detailed his conduct and remorse to the presentence report writer. Mr. Ogoshi has no prior arrests, convictions, or allegations of other criminal conduct. He has zero criminal history points and is in criminal

history category I. He was not a disciplinary problem in school or at home. He has not had disciplinary problems at the Newaygo County Jail. (ECF No. 78, PSR, PageID.688).

Mr. Ogoshi has not been scored as a leader or manager in the offense. He did not mastermind or plan the offense. Mr. Ogoshi joined the offense after it began and was taught how to blackmail by others. He did not send the messages encouraging suicide. Mr. Ogoshi participated in the offense for financial gain. He was in the same age demographic as many of the victims. Mr. Ogoshi has submitted a letter of apology to the Court. (Attachment 1, Letter of Samuel Ogoshi).

Mr. Ogoshi has a supportive family. His family in Nigeria has been in contact with counsel through the pendency of the case. The family has submitted its own apology letter. The family states that "we are committed to helping Samuel and Samson make amends and taking accountability for their actions." (Attachment 2, Letter of Ogoshi family).

At the time of his arrest, Mr. Ogoshi was a 21-year-old in his second year studying sociology at Nasarawa State University in Keffi, Nigeria. He is a native of Nigeria and had never left the country until his extradition in this case. He has no prior arrests or convictions. He had never been in jail prior to this arrest. Mr. Ogoshi relied on his parents for financial support and does not have any assets. His parents paid for his college, and he worked to have additional spending money.

Mr. Ogoshi's father is a retired member of the Nigerian Army. His father enlisted in the army on January 11, 1988. After completing his basic training, he was deployed to the army's intelligence corps, where he served as an intelligence officer. He served mainly in northern Nigeria, including the Borno State, which has been an area of conflict with

Boko Harum. As an intelligence officer, he contributed to internal security operations, which included countering the Boko Harum insurgency. In 2010, he was also deployed to Dafur, Sudan, through the United Nations. He remained a member of the Nigerian army until his retirement on December 16, 2022. He currently receives a pension, which supports the family.

Samuel Ogoshi has spent nearly his entire life living in military barracks. Until 2014, because of his father's role in the army, the family lived in northern areas of Nigeria where the threat of attack from Boko Harum was always present.

In March 2014, they were living in the Giwa Barracks, in Maiduguri, Borno State, which also housed Boko Harum detainees. Boko Harum attacked the barracks in attempted jailbreak and was able to overrun the barracks. Samuel and Samson fled with their mother. The barracks and the Ogoshi's home were destroyed by fire, and they lost all their possessions. The Ogoshi's knew most of the civilians who were killed, including four children in one neighboring family. When it was safe to come out of hiding, Samuel, Samson, and their mother ran to town where they were able to stay with a church member. The family relied on others for shelter, clothing, and food, until their father was transferred to a barracks in Lagos. Samuel and his family were traumatized and lived in fear after the attack.

Mr. Ogoshi's mother owns a small business selling soft drinks from her apartment in the Lagos barracks to others in the complex. She creates fresh juice daily from water, grind, and millet. When Mr. Ogoshi and her children are home, they help her make the juice and sell it.

Mr. Ogoshi and his family are Christians. They attend a local church at least three times per week (Tuesday, Wednesday, and Sunday). He has attended church for his entire life. Mr. Ogoshi's family is tight knit. They spent holidays and other special days with each other cooking local food, such as rice, semo fufu, vegetable soup, and yams.

As a child, Mr. Ogoshi was active in the church's children's choir and youth fellowship. He would spend his free time playing soccer in his neighborhood with other kids. After secondary school and prior to matriculating into college, he spent two years learning tailoring and designing customary Nigerian clothing.

Prior to this offense, Mr. Ogoshi was on track to lead a productive and law-abiding life. He never used illicit drugs and had not used alcohol in years. Mr. Ogoshi worked after high school so that he could learn and become skilled in a trade. He always wanted to have a skill to fall back on. He went to Nasarawa State University with the hope that he could find a professional job and establish himself in the Nigerian middle class. After graduation, he planned to start a career, get married, have a family, and own a home.

Mr. Ogoshi's time in college was disrupted by factors out of his control. He started college in December 2019. The COVID-19 pandemic closed his university and caused him to move home with his parents in March 2020. He returned to school in January 2021. In September 2021, he was at home on a break when the university closed indefinitely because of a teachers' strike. Mr. Ogoshi moved in with his parents for several months. In February 2022, he moved into a small apartment in the barracks with Samson and several of Samson's friends, including Ezekial Robert. At the time, Mr. Ogoshi was employed selling clothes, but he was also bored because he was not in school. His

roommates were already engaged in blackmail and using methamphetamine. Mr. Ogoshi joined them in the scheme because he wanted to make additional money. Mr. Ogoshi began using methamphetamine so that he could stay awake and be available to respond to Instagram messages.

Mr. Ogoshi was trained on how to engage in blackmail. He was given a script for the conversation with potential victims. Blackmail is prevalent in Lagos. There are many different types of schemes. Mr. Ogoshi participated in this type of blackmail because, if it was successful, the payment was quick.

He never traveled to the United States before his extradition. He did not have a passport and had never left Nigeria. The first Americans that he met in-person were the FBI agents on this case. He viewed the United States as a wealthy country and Americans as rich. He did not think that the amount of money would be significant to the victims. He thought that the threat of sharing nude photos would be embarrassing for the victims, but not that a victim would kill himself. The victims of the conspiracy were in the same age demographic and similarly situated in their schooling as the Ogoshi's and the other members of the conspiracy. They were in high school or college and teenagers or young adults. The purpose of the conspiracy was not to obtain nude photographs, but instead for financial gain.

Mr. Ogoshi is remorseful for committing this offense and the consequences for victims from it. He is sorry that Victim 1 took his life. Mr. Ogoshi has seen Victim 1's family in court and feels an immense sense of remorse for his role in their loss. Mr. Ogoshi

intends to apologize directly to Victim 1's family and other victims at sentencing. He has also agreed to pay restitution to Victim 1's family and other victims.

Mr. Ogoshi is also sorry for the pain that he has caused his own family by his role in this offense. While blackmail is prevalent in Lagos, Mr. Ogoshi's family was never part of it. They raised him to be a good, hardworking, and moral person. The family paid for Mr. Ogoshi and his older brother to go to college so that they could have a career and stable future. Mr. Ogoshi's arrest, along with his brother's, have caused the family significant stress, anguish, and shame.

As Samson's older brother, Mr. Ogoshi also feels that he failed. While Samson Ogoshi was already involved in the conspiracy before he joined, Mr. Ogoshi believes that instead of becoming involved, he should have told him to stop engaging the offense. Since their arrest, Mr. Ogoshi has attempted to protect his brother. Mr. Ogoshi wishes that he could take full responsibility for the offense and that his brother could go home.

Mr. Ogoshi is also sorry for the consequences of this offense on his own life. He believes that the world is moving on without him. His parents are getting older and he may never see them again. His college classmates graduated last month and are moving on with their lives. He is missing out on a career, getting married, starting a family, and buying a house.

b. **The nature and circumstances of the offense**

Mr. Ogoshi has consistently accepted responsibility for his role in this offense and for his conduct related to Victim 1. On January 17, 2023, he was arrested by the Nigerian Economic and Financial Crimes Commission (EFCC) at the request of the Federal Bureau of

7

Investigation (FBI). He was held without bail. He was not appointed an attorney and denied the ability to retain one.[1] Mr. Ogoshi immediately admitted his involvement in the offense. On January 18, 2023, Mr. Ogoshi made admissions. (ECF No. 78, PSR, PageID.697-699). He provided the EFCC with written statements on January 18, January 30, February 6, and February 9, 2023. *Id.* In the statements, he admitted learning the blackmail scheme from Ezekiel Robert and his role in it. He provided details on how the scheme was committed, which he referred to as an "online dating scam." Mr. Ogoshi also provided specific information about the blackmail of Victim 1. Mr. Ogoshi wrote that Ezekiel Robert threatened to ruin Victim 1's life by sending nude photographs to his friends and family. Mr. Robert encouraged Victim 1 to kill himself. Mr. Robert also sent the photographs to Victim 1's girlfriend. Mr. Ogoshi admitted receiving a portion of the money that was sent by Victim 1. He identified others that received a portion of the money. Mr. Ogoshi received his share of the money from Ezekiel Robert. Mr. Ogoshi provided the bank account number where it was transferred and told the EFCC that he purchased clothes with it.

Mr. Ogoshi identified all the Nigerian participants in the conspiracy and how he knew them. He identified his email addresses, Snapchat accounts, his bank account numbers, and other Instagram accounts that he purchased for the scheme. Mr. Ogoshi admitted buying the Dani.robertts Instagram account and modifying it.

Mr. Ogoshi was also interviewed by the FBI in Nigeria. On February 8, 2023, without the presence of an attorney or any formal promise of leniency, Mr. Ogoshi admitted his role in the scheme to the FBI. He told the FBI that he learned the scheme from Robert Ezekiel.

---

[1] This information was provided by Mr. Ogoshi's Nigerian attorney who was retained more than four months after his arrest.

He told them that he purchased Instagram accounts. He talked about how he found images for the accounts and how they would make the accounts look real.

Mr. Ogoshi is cooperating with the government in this case. (ECF. No 63, Plea Agreement, PageID.523-524). He has proffered and passed two polygraphs. (ECF No. 78, PageID.701-707). Samson Ogoshi also proffered and participate in two polygraphs. *Id.*

The government's theory of the case changed based upon the Ogoshis' cooperation. (*See* ECF No. 41, PageID.349). In its Affidavit in Support of Request for Extradition, the government stated that Samuel Ogoshi threatened to release the images of Victim 1 and encouraged him to commit suicide. The government took the same position in the bond proceedings. *Id.* However, the factual basis in the plea agreement states that the communication with Victim 1 started with an unindicted individual, continued with Samson Ogoshi, and then Ezekiel Robert took over the communication to exert additional pressure. (ECF No. 63, PageID.523, Plea Agreement, ¶ 8). Ezekiel Robert encouraged Victim 1 to kill himself. *Id.* Mr. Ogoshi told the EFCC in written statements in January and February 2023 that Ezekiel Robert told Victim 1 to kill himself.[2]

The conspiracy also involved unindicted co-conspirators. In December 2022, the FBI communicated to the Nigerian government that there were six members of the

---

[2] The government has filed a motion for a downward departure under U.S.S.G. § 5K1.1 and requested a two-level departure. (ECF No. 81, PageID.757-758). However, the government's request undervalues the substantial assistance provided by both Ogoshi's. The Ogoshis' cooperation and the two polygraphs corrected some of the most important factual inaccuracies in the government's theory of its case, as it relates to relative culpability. Based upon the government's original theory, Samuel Ogoshi was the sole defendant charged in Count One, a death eligible offense. The government believed that Sameul Ogoshi told Victim 1 to kill himself and included the accusation in pleadings provided to Nigerian courts and in this Court. The correction of the record is significant to Victim 1's family, to the prosecution of Samuel Ogoshi, the Ogoshi family, and ultimately to the prosecution of Ezekiel Robert. In addition, Samuel Ogoshi provided information about blackmail in Nigeria that will be helpful to the FBI. The factors under § 5K1.1(a) warrant a greater departure than the government has requested.

conspiracy in Nigeria. The FBI requested that the EFCC arrest all six individuals at the same time, but only three have been indicted. Two of the unindicted persons provided the means to commit the offense. F.E. "provided financial support to all the extortionists." F.E. recruited individuals in the United States who received payments from victims and then transferred the funds via cryptocurrency. E.W. hacked social media accounts and then sold them to individuals. The third unindicted person, O.E. had accounts that contained "the most amount of sextortion victim images."

In a parallel case, the government has charged five defendants with a conspiracy to commit money laundering. (*United States v. Green, et. al.,* 2:24-cr-17). The defendants are not facing any mandatory minimum penalties, but they played a very integral role in the main purpose of the offense, funneling money directly from victims to other co-conspirators. *Id.* The indictment alleges that the defendants were financial conduits for "sextortion" schemes, including this case. *Id.* The indictment said that the defendants kept a portion of the victims' fund, typically 20%. *Id.* The laundered transactions included the $300 that Victim 1 paid. *Id.* The funds were received by defendant Johnathan Green. *Id.* The indictment also includes a forfeiture allegation and alleges property to be forfeited, including a money judgment of $178,658. *Id.* Despite being the recipient of money directly from Victim 1, the government did not seek Mr. Green's detention at his initial appearance, and he is free on bond. Two other defendants in the case have been arrested, Kendall Ormond London, Jr. and Brian Keith Coldmon, Jr., and both were released on bond.

### c. The advisory sentencing guidelines and purposes of sentencing

Mr. Ogoshi requests the Court vary downward from the advisory sentencing guideline range based upon the factors in his sentencing memorandum, the attached letters, and the Presentence Investigation Report. As recognized by probation, the advisory guidelines do not consider the unique facts and circumstances of his case. Mr. Ogoshi has no prior arrests or convictions and no other pending cases. He has a supportive family. He has cooperated with the Nigerian and American authorities since being first arrested. He pleaded guilty and accepted responsibility and has great remorse for his actions. He is incarcerated in a foreign country and separated from his family and countrymen. While he is in the same jail as his brother, they have had minimal contact. Upon release, he intends to return to Nigeria and remain law abiding. He has been specifically deterred from engaging in criminal behavior.

Mr. Ogoshi is facing a mandatory minimum penalty of 15 years in prison. His advisory guideline range is 30 years. A sentence below the guideline range, and even at the mandatory minimum, would reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Additionally, Samuel and Samson Ogoshi's arrests and extradition have already generally deterred others from engaging in this type of blackmail. Their arrests and extradition have been widely covered in Nigerian media. There are articles covering the arrest and extradition on BBC News Pidgin[3], Premium Times Nigeria[4], Today News

---

[3] https://www.bbc.com/pidgin/articles/ck5l5w4ny7ko (accessed August 22, 2024).

[4] https://www.premiumtimesng.com/news/top-news/616063-nigeria-extradites-siblings-to-us-to-face-sextortion-charges.html (accessed August 22, 2024).

Africa[5], press releases by the Economic and Financial Crimes Commission (EFCC)[6], and numerous other African, American, and international news outlets. Many of the articles discuss the mandatory prison sentences in this case and include the messaging of the Department of Justice, FBI, and EFCC.

While there are high profile examples of Nigerians being arrested in Nigeria and extradition to the United States being denied.[7] The Ogoshis' case has sent a message that arrest and extradition to the United States is possible and that there are risks of engaging in blackmail. The case is being discussed online. Counsel has over 160 pages of portions of social media discussions and local news coverage about the Ogoshis' arrest and extradition.[8] The Ogoshis' arrest, mandatory minimum sentence, and extradition has caused people to fear the consequences of engaging in blackmail. A sentence below the advisory guideline range will not reduce the general deterrent effect of their arrest and extradition.

While Mr. Ogoshi is facing significant statutory penalties, he remains optimistic about his future. He intends to take advantage of any available resources in the Bureau of Prisons. Upon release, he wants to return to his family in Nigeria, have a career, raise his own family, and own a home.

---

[5] https://todaynewsafrica.com/two-nigerian-men-extradited-to-the-united-states-facing-charges-in-international-sexual-extortion-ring/ (accessed August 22, 2024).
[6] https://www.efcc.gov.ng/efcc/news-and-information/news-release/9411-siblings-extradited-to-u-s-over-child-exploitation-sextortion (accessed August 22, 2024).
[7] https://www.reuters.com/world/nigerian-court-refuses-extradition-police-chief-indicted-us-2022-08-29/ (accessed August 22, 2024).
[8] These documents are available to be provided upon request.

## Conclusion

Samuel Ogoshi prays this Honorable Court sentence him sufficiently, but not greater than necessary, to achieve the goals of sentencing. He thanks the Court for its time in considering his circumstances and this case.

    Respectfully submitted,

    SHARON A. TUREK
    Federal Public Defender

Dated: August 22, 2024    /s/ Sean R. Tilton
    SEAN R. TILTON
    Assistant Federal Public Defender
    50 Louis, NW, Suite 300
    Grand Rapids, Michigan 49503
    (616) 742-7420